MYERS B. STEELE, THOMAS R. STEELE and JOHN R. STEELE
    vs. PETER T. HELM, adm'r c. t. a. of JOHN STEELE, de-
    ceased.

Sussex County, April Term, 1896.

**Will, Execution, Attesting Witnesses.**—Under the law of this State every
will to be valid (except a nuncupative will), whether of personal or real estate,
must be in writing and signed by the testator, or by some person subscribing
his name in his presence and by his express direction, and attested and sub-
scribed in the testator's presence by two or more credible witnesses.   But it is not.
necessary, under our statute, that said witnesses should so attest and subscribe
the will in the presence of each other.   If each shall separately attest and
subscribe the same in the presence of the testator, it will be sufficient.

**Will, Testamentary Capacity. Burden of Proof.**—Where the validity of a
will is contested, the party seeking to establish it must, in the first instance,
prove by satisfactory evidence that the will was in writing, that it was signed
by the testator, that it was attested and subscribed in his presence by two or
more credible witnesses, and that the testator was twenty-one years of age or
upwards at the time the will was made.   When these facts are shown, as in the·
present instance, the testator is, in law, presumed to be of sound and disposing
mind and memory—in other words, to be capable of making a will—until the
contrary is shown.

**Same.**—The burden is then upon those who object to the validity of the will on the
ground either of want of capacity to make it, or of undue influence, to establish
these objections to the satisfaction of the jury by competent evidence.

**Same.**—Neither testamentary incapacity nor undue influence is to be presumed, but
each must be satisfactorily shown to the jury by the preponderance or greater
weight of the entire evidence in the case before them.

**Same.**—Whether or not the testator was of sound and disposing mind and memory
is to be determined by the facts, circumstances and opinions constituting the·
evidence in the particular case.

**Same.**—The state or condition of a person's mind at the time is a fact to be proved

like any other fact in the case; and evidence is admissible to show the state of his mind both before and after the execution of said will.

**Same. Evidence.**—The existence or want of testamentary capacity, or the exercise of undue influence, may be proven by both direct and circumstantial evidence, yet, to be material, it must tend to show his testable capacity or incapacity, and his free or controlled will, at the very time when said instrument was executed; for that is the essential and precise fact to be determined.

**Same.**—What is a sound and disposing mind and memory is to be decided *solely* and *only* by the facts which the testimony in the case discloses.

**Same.**—It is to the words, the conversations, the appearance, the acts and doings, the conduct and behavior of the man we are to look to ascertain the state of his mind; these alone, are to us, the external, visible and natural signs, or indications, of his mental condition. And, therefore, the question of capacity must be determined from the facts and circumstances disclosed and established by the evidence.

**Will. Testamentary Capacity. Attesting Witnesses.**—The law makes a distinction between the subscribing witnesses to the will and other witnesses. The subscribing witnesses being placed by the law around the testator, at the time of the execution of his will, for the special purpose, among others, of ascertaining and judging of his capacity, they are permitted to testify as to the opinion they formed at the time, of the condition of his mind,—whether it was sound or unsound.                                                                                   .:.

**Will. Testamentary Capacity. Expert Testimony.**—Medical witnesses may also testify as to the effect of disease on the mind, and their opinions on the question of mental capacity may be given in evidence, and are in many instances, entitled to consideration and respect. But the value and weight of such testimony, must necessarily depend upon the professional *character* and *standing* of the witness.

**W,ll. Testamentary Capacity. Witnesses Generally.**—Other witnesses may testify to his behavior, his conduct and conversations, his appearance, and to particular facts tending to throw light on the state of his mind, and from which its condition can be fairly inferred,—but they cannot testify to their opinion

merely, of his capacity, without also stating the facts upon which that opinion is founded; and if the facts do not fully and clearly warrant that opinion, the opinion must go for nothing, for it is the fact, and not the opinion, upon which you may rely, in forming your judgment.

**Will. Testamentary Capacity.**—Intellectual feebleness alone, or mere weakness of the understanding, whether this condition of the mind be natural, or the result of an injury, or of disease, does not disqualify a person from making a valid will.

**Same.**—A partial failure of mind or memory, that is to say, even a failure of mind or memory, to a considerable extent, whether it arise from an attack of apoplexy or a paralysis or from any other cause, is not, in itself, sufficient ground for setting aside a will, if there still remains sufficient mind and memory to enable the testator to comprehend and understand what he is about, or what he is doing. If he is able to understand that he is disposing of his estate by his will, and to whom he is disposing it, however weak his intellect may be, he is able and competent to make a valid will.

**Same.**—The question is not so much as to the degree of mind or memory possessed by the testator as this: Had he sufficient mind and memory? Had he a disposing mind and memory?

**Same.**—In considering and determining the question of capacity, the time when the will was executed is the material point to which the jury must look to ascertain the state and condition of the testator's mind. For, although he may have been incapable at any time before, or after that period, yet, if he had sufficient capacity at the time when the will was executed, his prior or subsequent incapacity amounts to nothing and the will must stand.

**Will. Undue Influence.**—Undue influence is such an influence exerted over the testator's mind as to take away or destroy for the time his own free will; it must be such an influence obtained either by flattery, excessive importunity, or threats, or in some other mode, by which such a dominion is acquired over the will of the testator, as to overbear and destroy his free agency and constrain him to do, against his own free will what he is unable to refuse. But that influence which is acquired by "moderate" persuasion or by arguments addressed to the understanding or by mere appeals made

to the affections of the testator, does not amount in legal contemplation to undue influence, or such influence as invalidates a will.

This was an issue from the Register of Wills of Sussex County under an order for a review of the will of John Steele, deceased. The facts as stated in the charge of the Court were as follows:

John Steele, late of Baltimore Hundred, in Sussex county, according to the testimony, was born June 5, 1805, and died in October, 1892, in his eighty-eighth year. He was twice married. By his first marriage he had eight children. By his second marriage he had no children. About the year 1870 he married his second wife, Elinor Helm, then a widow and the mother of two children, both sons by her former husband. He was then in his sixty-fifth year and she in her forty-fifth. After his marriage he ceased farming, sold out his farming utensils, stock, etc., and thereafter lived with her until his death. She still survives him. After giving up farming he engaged in store-keeping for a number of years, from which he finally retired about the end of the year 1887.

On January 29th, 1889, and about three and a half years before his death, he executed the paper writing under review, which was alleged by the propounder or plaintiff in this cause to be his last will and testament. According to the testimony of his son, Thomas R. Steele, a witness for the reviewers or defendants contesting it, both the signature and the body of this paper writing were in the handwriting of the said John Steele, the alleged testator. At the time of its execution said John Steele was in his eighty-fourth year, and his wife, Elinor, was an elderly woman, about sixty-four years of age.

By the will he left all his property, real and personal, after payment of his debts and funeral expenses, to his wife, Elinor, subject to the payment by her of two dollars to each of his then surviving seven children, whom he respectively named therein. He also constituted her the executrix thereof.

Questions of Evidence.

At the trial the following questions were asked and ruled upon :

Thomas R. Steele, one of the reviewers, was asked by *Richards* for the reviewers:

Q. Have you heard the wife of John Steele say why she kept him away from church ? A. Yes, sir.

*White,* for the proponents, objected to the question, as irrelevant, and the witness in reply to a further interrogatory, stated that he did not know whether or not what was said by the wife was in the presence of John Steele.

*Richards,* for the reviewers. The question is admissible. The widow is a beneficiary under the will and the reviewers can show any declarations made by her, either as to undue influence or as to the mental capacity of the testator, against her interest as a beneficiary.

The objection was sustained.

The same counsel then asked :

Q. From the facts that you have detailed to the jury, do you consider that your father, in January, 1889, was of sound and disposing mind and memory and capable of making a will?

*White,* for the proponents, objected. The witness is neither a testamentary witness nor a medical expert, and therofore cannot give his opinion to the jury.

GRUBB, J. The question is admissible under the decisions of Chief Justice Gilpin in the cases of *Lodge vs. Lodge's Will,* 2 Houst. 421, and *Jamison vs. Jamison's Will,* 3 Houst. 121, in which cases it was held that a witness who was not a medical or other expert, or testamentary witness cannot give his opinion to the jury until he has first stated the facts upon which he bases that opinion. He gives his opinion to the jury upon the facts which he has testified to before the jury, and it is for the jury to decide what his opinion is worth, upon those facts which they have before them, from him.

We will not confine you to conversations or acts of the testator, or his appearance or manner, and say you shall show those at the particular date when his will was made and that you shall not show any conversations, acts, etc., either before or after that time. You may show all those circumstances which go to indicate the condition of the man's mind before or after the date of making his will; upon which facts as detailed by the witness he may express an opinion. That is the law of this State.

I will add, that, if the facts proved tend to show the capacity or incapacity of the testator more or less remote from the date of the making of the will, that goes to its weight before the jury. Facts showing the condition of the testator's mind immediately at the time of making the will (if believed by the jury) of course would have greater weight than facts showing his condition two, three, four or five years before that time. If it is shown, however, that the testator before the time of making his will is either totally or partially insane to the extent that he would not be capable of making a will, under the law of our State, that condition would be presumed to continue down to the time of making the will; unless the contrary is shown by evidence that he had recovered from such incapacity at the time of the subsequent making of his will. .

GRUBB, J., (charging the jury).

By the decree of the Register of Wills of this county, after the death of John Steele, the will in question was admitted to probate October 26, 1892; and said Elinor Steele, having renounced as executrix, her son by her first marriage, Peter T. Helm, the present plaintiff, was duly appointed the administrator c. t. a. Subsequently for the purpose of having this will rejected and the letters of administration c. t. a. revoked, the defendants in this cause, on their petition filed October 5, 1895, obtained the order of the Register for a review of the probate thereof. In order to aid his judgment, the Register, in the exercise of his lawful authority, has ordered here the issue of fact which is now being tried by you in this Court. That issue or

question of fact which you are now to try and determine by your verdict is: "Whether the paper writing bearing date January 29, 1889, and purporting to be the last will and testament of the said John Steele, deceased, is or is not the last will and testament of the said John Steele, deceased."

Under the law of this State no person shall be deemed capable of making a will either of real or personal estate who is not of the age of twenty-one years or upwards, and of sound and disposing mind and memory. Moreover every will to be valid (except a nuncupative will), whether of personal or real estate, must be in writing and signed by the testator, or by some person subscribing his name in his presence and by his express direction and attested and subscribed in the testator's presence by two or more credible witnesses. But it is not necessary, under our statute, that said witnesses should so attest and subscribe the will in the presence of each other. If each shall separately attest and subscribe the same in the presence of the testator, it will be sufficient.

But in this case the objection made to this alleged will by the defendants is not on the ground that it was not in writing and actually signed by John Steele and duly attested and subscribed by the prescribed number of credible witnesses in the testator's presence. The contestants' real grounds of objection to the validity of said will are, first, that John Steele at the time he executed said will was not, within the meaning of our law, of sound and disposing mind and memory; second, that the will was obtained by what is termed undue influence, which was exerted over his mind to such an extent as to procure a disposition of his property to be thereby made, contrary to his said wishes.

Where the validity of a will is contested, the party seeking to establish it must, in the first instance, prove by satisfactory evidence that the will was in writing, that it was signed by the testator, that it was attested and subscribed in his presence by two or more credible witnesses, and that the testator was twenty-one years of age, or upwards, at the time the will was made. When these facts are shown, as in the present instance, the testator is, in law,

presumed to be of sound and disposing mind and memory—in other words, to be capable of making a will—until the contrary is shown.

The burden, therefore, is then upon those who object to the validity of the will on the ground either of want of capacity to make it, or undue influence, to establish these objections to the satisfaction of the jury by competent evidence. Neither testamentary incapacity nor undue influence is to be presumed, but each must be satisfactorily shown to the jury by the preponderance or greater weight of the entire evidence in the case before them.

Whether or not the testator was of sound and disposing mind and memory—that is, of testable capacity at the time of making a particular will, is to be determined by the facts, circumstances and opinions constituting the evidence in the particular case. The state or condition of a person's mind at the time, is a fact to be proved like any other fact in the case; and in order to ascertain this, evidence is admissible to show the state of his mind both before and after the execution of said will. Accordingly either the existence or want of testamentary capacity, or the exercise of undue influence, may be proven by both direct and circumstantial evidence. But whether such evidence relate to the state of the testator's mind and situation before, at or after the making of his contested will, yet, to be material, it must tend to show his testable capacity or incapacity, and his free or controlled will, at the very time when said instrument was executed; for that is the essential and precise fact to be determined.

In considering the testimony, if you find that any of the witnesses contradict each other, you must decide between them after viewing the testimony of each in connection with all the facts and circumstances proved in the case, and after considering their relative impartiality and truthfulness, and the comparative qualifications and advantages of each for forming the opinions and observing, apprehending, recollecting and detailing the circumstances and matters concerning which they have testified. When there is a conflict of testimony you must reconcile it if possible. If you can-

not do so, then you may reject so much thereof as you deem the less trustworthy and accept that portion which you consider the more so, after due deliberation upon all the evidence submitted from the witness stand, and from no other source.

We are now brought to the consideration, for your instruction and guidance, of what is the meaning, in legal contemplation, of what is called a "sound and disposing mind and memory," and "undue influence," in relation to the validity of a will.

Undoubtedly a testator, in this State, may make his will if, at the time of doing so, he be in possession of a sound and disposing mind and memory and in the exercise of a free and unrestrained will, and may thereby, if he so desire, dispose of his property, justly or unjustly, and leave it, at his pleasure or caprice, to his wife, or even to a stranger, to the total exclusion of his children or other relations.

Hence it is very important to understand when, in law and in fact, he is not in the possession or exercise of such testamentary capacity or free will.

In the leading cases of *Jamison vs. Jamison's Will*, 3 Houst. 108, and of *Lodge vs. Lodge's Will*, 2 Houst. 418, this subject was ably and exhaustively considered, after an ample review of the prior adjudications in this State, and the result authoritatively announced by Chief Justice Gilpin in his characteristically clear, exact and comprehensive language. I will therefore repeat to you so much of it as the determination of this case seems to require.

In *Jamison et al. vs. Jamison's Will*, 3 Houst. 119, Chief Justice Gilpin says:

" What is the meaning of the terms employed in our law, 'a sound and disposing mind and memory?'—and how is the question to be decided ? This question, it seems to me, cannot be properly determined by any metaphysical theory that we know of, for these are mainly mere theoretical speculations, and are very difficult of comprehension by the common mind, uneducated as it is in the subtleties and niceties of what is called moral philosophy. Nor can it be settled by conjecture, or the mere opinions of the wit-

nesses.   On the contrary, the question is to be decided *solely*, and *only*, by the facts which the testimony in the case discloses.   *   *   *   *   *   *   And in considering these facts you are imperatively called upon, as men of common sense, to exercise your best judgment in deciding the issue before you.   Medical witnesses, however well educated and however well acquainted with the anatomy of the body, and with man's physical condition, are, nevertheless unable to throw much *light* on the nature of the mind, or the mode of its operations.   *   *   *   *   You will, however, gentlemen, in dealing with this case, divest your minds of all metaphysical notions—all mere theories—and confine your attention exclusively to the facts established by the testimony ; because, for all the purposes of this life, we deal with the mind, and judge of its strength or weakness, its wisdom or folly, its sanity or imbecility, its soundness or unsoundness, according to its manifestations to us and others, in the intercourse, affairs and business of this world."
*   *   *   *   *   *

" It is therefore to the words, the conversations, the appearance, the acts and doings, the conduct and behavior of the man we are to look to ascertain the state of his mind ; these alone, are to us, the external, visible and natural signs, or indications, of his mental condition.   And, therefore, in this case, as in all other cases of like nature, the question of capacity must be determined from the facts and circumstances disclosed and established by the evidence.   In examining and weighing that evidence you will carefully consider the character of the several witnesses, for veracity and integrity,—their bias, on the one side, or on the other, if any,—their intelligence and judgment, and their respective opportunities and powers of observation.   And here it is but proper I should say to you that the law makes a distinction between the subscribing witnesses to the will and other witnesses.   The subscribing witnesses being placed by the law around the testator, at the time of the execution of his will, for the special purpose, among others, of ascertaining and judging of his capacity, they are permitted to testify as to the opinion they formed at the time, of the condition

of his mind,—whether it was sound or unsound. And if they are persons of impartiality, adequate intelligence and veracity their opinions are always entitled to great weight with the jury." But to be viewed, of course, in connection with all the trustworthy evidence in the case. "Other witnesses may testify to his behavior, his conduct, and conversations, his appearance,,and to particular facts, tending to throw light on the state of his mind, and from which its condition can be fairly inferred,—but they can not testify to their opinion merely, of his capacity, without also stating the facts upon which that opinion is founded ; and if the facts do not fully and clearly warrant that opinion, the opinion must go for nothing, for it is the fact, and not the opinion, upon which you must rely, in forming your judgment."

" Medical witnesses may also testify as to the effect of disease on the mind, and their opinions on the question of mental capacity may be given in evidence, and are in many instances, entitled to consideration and respect. But the value and weight of such testimony, must necessarily depend upon the professional *character* and *standing* of the witness. If he be a person of more than ordinary intelligence and learning in his profession, of undoubted sobriety and correctness of judgment, and of great experience, in regard to diseases affecting the mind, his opinions are justly entitled to the respectful consideration of the jury," in connection with all the evidence in the case.

Chief Justice Gilpin continues :

" I now recur to the question—What is meant by 'sound and disposing mind and memory ?' "

"And here, I may remark, generally, that there are evidently many varying grades of mental capacity—ranging from weak to strong—from the lowest to the highest degree of intelligence."

"Intellectual feebleness alone, or mere weakness of the understanding, whether this condition of the mind be natural, or the result of an injury, or of disease, does not disqualify a person from making a valid will.

"A partial failure of mind or memory, that is to say, even a

Charge.

failure of mind or memory, to a considerable extent, whether it arise from an attack of apoplexy or paralysis, or from any other cause, is not, in itself, sufficient ground for setting aside a will, if there still remains sufficient mind and memory to enable the testator to comprehend and understand what he is about, or what he is doing. If he is able to understand that he is disposing of his estate by his will, and to whom he is disposing of it, however weak his intellect may be, he is able and competent to make a valid will.        *        * ·        *        *        *        *        *

"The question is not so much as to the degree of mind or memory possessed by the testator, as this: Had he sufficient mind and memory? Had he a disposing mind and memory? Was he capable of recollecting what property he was disposing of, and to whom he was disposing of it? In a word, were his mind and memory sufficiently sound to enable him to know, and to understand the business in which he was engaged, at the time when he executed his will"—and that he was then making his will.

"In considering and determining the question of capacity, the time when the will was executed, is the material point to which the jury must look, to ascertain the state and condition of the testator's mind. For, although he may have been incapable at any time before, or after that period, yet, if he had sufficient capacity at the time when the will was executed, his prior or subsequent incapacity amounts to nothing and the will must stand."

In *Lodge vs. Lodge's Will*, 2 Houst. 424, Chief Justice Gilpin further says:

"As to the question of undue influence, we say to you that it must be such an influence exerted over the testator's mind as to take away or destroy for the time his own free will; it must be such an influence obtained either by flattery, excessive importunity, or threats, or in some other mode, by which such a dominion is acquired over the will of the testator as to overbear and destroy his free agency, and constrain him to do, against his free will, what he is unable to refuse. But that influence which is acquired by moderate persuasion, or by arguments addressed to the under-

standing; or by mere appeals made to the affections of the testator, does not amount in legal contemplation to undue influence, or such influence as invalidates a will.

"In determining this question the jury will take into consideration the age of the testator, the state of his mind, the relation of the parties to each other, his affections and preferences and indeed all other circumstances disclosed by the evidence, calculated to enlighten their consciences on this point.

"Finally, if the jury believe from the evidence that the testator" (John Steele) "signed the paper writing in question, as his will, or knowing it to be such, and that" F. A. Daisy and James Phillips "attested and subscribed the same as witnesses in his presence, and at the time of so signing, he had sufficient memory and understanding to know, and did know what he was doing, and what disposition he was making of his property, and was not constrained by undue influence to do so, against his free will—then it will be your duty to find that the paper writing propounded as his will, is his last will and testament—otherwise you will find that it is not his will and testament.

"In considering the evidence and in deciding these questions, the jury will bear in mind and apply to the facts before them the rules of law which I have thus briefly stated for your guidance."

We now leave the case with you, gentlemen, for your determination and verdict.

*Charles F. Richards*, for the reviewers.

*A. F. Polk* and *R. C. White*, for the propounders.

NOTE.—In the case of *Cummins, et al. vs. Cummins, et. al.,* reported in 1 Marvel 423-449, CULLEN, J., concurred in the decision that the decree of the Register's Court should be affirmed, but delivered no opinion. This only required the passing upon the following questions, viz.: That the granting or refusing of an issue *devisavit vel non* by the Register is a matter within his dis-

cretion ; that the heir-at-law is not entitled as of right to have such issue granted and tried on demand, nor because there is a contrariety of evidence in the case, and that it clearly and satisfactorily appeared from the evidence that George W. Cummins was at the time in question of sound and disposing mind and memory, and not the subject of undue influence. The CHIEF JUSTICE and GRUBB, J., expressed opinions in which they differed, upon the questions as to whether or not the Superior Court, on appeal, has the power to try the case *de novo*, or authority to reverse the decision of the Register, remand the case and require him to grant an issue. .

As these latter erroneously appear by the second and fourth paragraphs of the syllabus of the case as reported, to have been decided, this correction is here made.